**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUCY WASHINGTON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24 cv 12842 |
| | ) | |
| CARLY CERVANTEZ #8761, | ) | |
| RENATA KLEPACKI #12848, | ) | Hon. Virginia Kendall |
| and CITY OF CHICAGO | ) | |
| Defendants. | ) | |

## **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

NOW COMES the Plaintiff, Lucy Washington, by and through counsel, Brandon Brown, The Brown Law Ltd., with the instant response in opposition to Defendant's Motion to Dismiss, and respectfully requests that the Defendant's motion be denied. In support thereof, Plaintiff state as follows:

**Introduction and Factual Background**

The instant action arises from the unlawful conduct, on December 16, 2023, when and where Plaintiff Lucy Washington was unlawfully arrested, falsely charged with a felony, and unlawfully detained. After arresting the Plaintiff, Defendant Officers Carly Cervantez and Renata Klepacki commenced criminal proceedings against Lucy Washington without probable cause or legal justification. At the time, the Defendants knew that there was no cause or justification to commence such proceedings against the Plaintiff. Defendant Officers did so willfully and wantonly in order to accomplish an unlawful purpose. Plaintiff alleges, *inter alia*, Unlawful Pre-Trial Detention, Malicious Prosecution and Conspiracy to Deprive Constitutional Rights. Plaintiffs filed suit under 42 U.S.C. § 1983 against the City of Chicago and the Defendant Officers.

**Legal Standard**

The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the complaint. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996). The federal notice pleading standard requires only that "a complaint state the plaintiff's legal claim ... together with some indication ... of time and place." *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Claims under *Monell* are not subject to a more stringent pleading standard than any other claim. *White v. City of Chicago*, 829 F.3d 837, 843–44 (7th Cir. 2016) (citing *Leatherman v. Tarrant Cty. Narcotics Intel. & Coord. Unit*, 507 U.S. 163, 164 (1993)). When evaluating a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint, and draw all reasonable inferences from those facts in the plaintiff's favor. *Anchor Bank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. Wis. 2011). A complaint should be dismissed only if the plaintiffs would not be entitled to relief under any set of facts that could be proved consistent with the allegations. *See Visiting Nurses Ass'n of Southwestern Indiana, Inc. v. Shalala*, 213 F.3d 352, 354 (7th Cir.2000).

The Court's role in reviewing the complaint is "necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). Moreover, courts should freely give leave to amend a complaint when justice so requires. Fed.R.Civ.P. 15(a)(2); *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002). A court will grant a motion to dismiss only if the plaintiff cannot prevail under any set of facts that could be proven consistent with the allegations. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

**Argument**

The City incorrectly presents that a *Monell* plaintiff must cite to specific instances where Chicago Police Officers unlawfully stopped an individual once they determined the individual's FOID and CCL status to conduct a search for a firearm. *See Dkt. 16 at 6.* The cases cited by the City of Chicago, for example *Adickes v. S.H. Kress & Company,* for this proposition are incompatible, because they concern a plaintiff's burden at the summary judgment and not at the motion to dismiss stage. *See Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 670–71 (7th Cir. 2009); *Palmer v. Marion County*, 327 F.3d 588, 592–93 (7th Cir. 2003). Even as a statement of the burden at summary judgment, however, the City's characterization is wrong. *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) (en banc) ("[Municipal liability] can be proven in a number of ways, including but not limited to repeated actions. A single memo or decision showing that the choice not to act is deliberate could also be enough."). Although Ms. Washington has alleged a widespread pattern of misconduct implicating dozens or hundreds of individuals, she is not required to do so in order to state a claim under *Monell*. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (holding that the plaintiff "was not required to identify every other or even one other individual" who was the victim of the alleged municipal policy); *see also Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018) ("[A] plaintiff raising a *Monell* claim may rely solely on his own experience, rather than being required to plead examples of other individuals' experiences.").

**I. Plaintiff's Claim is well plead**

The Defendant City first presents that the Plaintiff does not plead sufficiently to allow for the court to draw the reasonable inference that the City maintains a problematic policy or custom in

question. In doing so, the City completely disregards, the instant complaint. Contained within the Complaint are allegations that, the Chicago Police Department has a policy of executing unlawful traffic stops and illegal searches and seizures on vehicles, upon conducting a Secretary of State vehicle license place check via LEADS and learning the person or citizen's FOID or Concealed Carry License status in order to conduct a search for a firearm. Dkt. 3 ¶102. There likewise existed a widespread policy and practice of engaging in unlawful traffic stops. The Chicago Police Department routinely target African-American drivers through pretextual traffic stops with underlying "alleged" minor traffic violations. Dkt. 3 ¶104. The Chicago Police Department has a policy, practice and history of making unconstitutional stops for minor traffic violations so that the Officers can intentionally escalate the traffic stop into a full unconstitutional search. Dkt. 3 ¶105. The Defendant Officers were able to access Lucy Washington's records, as the records were accessible to the Defendant Officers via Leads and the Illinois Secretary of State, when the Defendant Officers ran Lucy Washington's license plates. Dkt. 3 ¶ 16. Equipped with this information, the Defendant Officers executed an unlawful pretextual traffic stop in order to conduct a fishing expedition for firearm recovery. Dkt.3 ¶17. These widespread policies and practices are well known to, tolerated by, and/or enforced by policymakers throughout all levels of the Chicago Police Department and the City of Chicago administration, who have yet to take effective measures to address the systemic problems related to the Department. Dkt. 3 ¶ 106. As a result of these policies and practices, the City allows officers to act with impunity in engaging in misconduct, knowing that their fellow officers, supervisors, and City officials will turn a blind eye to and cover up their actions. Dkt. 3 ¶ 107. These allegations are not "legal conclusions," nor do they parrot the elements of a *Monell* claim; instead, these allegations are specific contentions of fact that give rise to an inference of

municipal liability.

As opposed to grappling with the allegations presented by Plaintiff Washington, the Defendant City of Chicago simply points to *McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011), to argue that the allegations are conclusory. *McCauley* in no way supports the City's mischaracterization. In *McCauley*, the plaintiff brought an equal protection claim against the City for failing to enact policies sufficient to protect women from domestic violence. *Id.* at 614–15. The Seventh Circuit affirmed the dismissal of the *Monell* claim, reasoning that there is no cause of action under the equal protection clause for failure to protect a particular class of crime victims. *Id.* at 619. The analysis of the *Monell* claims in *McCauley* are distinguishable from the instant case currently before the Court; the City cannot and does not argue that the Officers' misconduct, as alleged in the complaint, violated Lucy Washington's Constitutional rights under the Fourth and Fourteenth Amendments. *See, e.g.*, *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019) ("It has been clear since at least [1978] that falsifying the factual basis for a judicial probable-cause determination violates the Fourth Amendment.").

To the extent *McCauley* applies at all, it demonstrates that Lucy Washington's *Monell* allegations are well-formed statements of fact, not legal conclusions. In *McCauley*, after disregarding the purely legal conclusions in the plaintiff's complaint, the Seventh Circuit identified the well-pleaded factual allegations that remained. *Id.* at 618. These allegations are, if anything, *more* general and conclusory than Plaintiff's *Monell* allegations in this case. *Id.* (citing examples of well-formed *Monell* allegations, including "maintaining a custom, practice and policy of ignoring the seriousness of domestic violence arrests"). It bears repeating that the Seventh Circuit did not refuse to consider these allegations because they were "legal conclusions," but rather affirmed dismissal because the plaintiff did not allege a basis for relief

under the equal protection clause. *Id.* at 619. *McCauley* is therefore relevant only to disprove the City's mis-characterization of the complaint as consisting solely of legal conclusions.

Were the Court to adopt the Defendant City of Chicago's subjectively interested interpretation of *McCauley*, it would be impossible for any plaintiff to ever allege the existence of a widespread practice or custom. The Defendant City's attempt to label the Plaintiff's *Monell* allegations as pure legal conclusions ignores the countless citations to data, results of investigations, admissions of its own policymakers, and other empirical evidence of CPD's defective policies and practices. The factual allegations as outlined in the Complaint clearly state a *Monell* claim without reciting the elements of the claim, and the City's motion to dismiss should be denied.

**II. Plaintiff has pled causation and clearly established that the City's Policies were the moving force.**

The City's final arguments concern "moving force" and the elements of causation. These arguments rely on the previous position taken by the City of Chicago's arguments rely on the same meritless arguments previously addressed. For instance, the City again incorrectly labels Plaintiff's allegations as "legal conclusions." These arguments have no legal basis, and they do not require further discussion beyond responses provided earlier in this brief. The City's arguments concerning causation simply represent their flawed arguments about the deficiencies in Plaintiff's *Monell* allegations. Under the Supreme Court's *Monell* jurisprudence, the entire purpose of requiring a plaintiff to allege a widespread practice is to support a reasonable inference of municipal culpability and causation. *See Connick v. Thompson*, 563 U.S. 51, 60–61 (2011); *Bd. Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 405 (1997). Put another way, pleading a widespread practice or custom satisfies the requirement to plead culpability and causation by

permitting an inference that the municipality was deliberately indifferent to the fact that its policies caused constitutional deprivations. *See, e.g.*, *Bryan Cty.*, 520 U.S. at 407 ("If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability."). The Defendant City's insistence on some other, additional allegations of deliberate indifference and causation thus rests on a misinterpretation of the law.

Additionally, the Defendant City of Chicago, again completely ignores the Plaintiff's detailed allegations concerning the Chicago Police Department's widespread and practice of targeting African-American motorists and manipulating an individual's FOID status as a basis for searching their automobile and conducting unlawful seizures. In its arguments for dismissal, the Defendant City attempts to impose a pleading standard under *Monell* that would serve to undermine, compromise, if not eliminate municipal liability. The Defendant City's arguments have no legal basis. The allegations as contained in the complaint are sufficient and perfectly appropriate under *Monell.* Accordingly, the Defendant City's argument should be rejected.

WHEREFORE the Plaintiff, Lucy Washington, respectfully requests that this Honorable Court deny the Defendants' Motion to Dismiss and provide any further relief this Court deems equitable and just.

**Dated: 13 March 2025**

       Respectfully Submitted,

       **LUCY WASHINGTON**

By: /s/ Brandon Brown
   *Plaintiff's Attorney*

   THE BROWN LAW LTD.
   4455 S. King Drive
   Suite 100A
   Chicago, Illinois 60653
   T: (773) 624-8366
   F: (773) 624-8365
   E: bbrown@thebrownlaw.com

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies, on oath, that the foregoing, PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS, was served on all counsel of record via the Court's electronic filing system or CM/ECF on:

on Thursday, March 13, 2025.

                                                                                            /s/Brandon Brown