THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCY WASHINGTON, ) | |
| ) | |
| *Plaintiff,* ) | |
| v. ) | |
| ) | No. 24 C 12842 |
| CITY OF CHICAGO, CARLY ) | |
| CERVANTEZ, and RENATA ) | Chief Judge Virginia M. Kendall |
| KLEPACKI, ) | |
| ) | |
| *Defendants*. ) | |

## OPINION AND ORDER

Lucy Washington has sued the City of Chicago ("City") and two Chicago Police Officers, Carly Cervantez and Renata Klepacki ("Defendant Officers"), under 42 U.S.C. § 1983 based on a traffic stop and arrest that occurred on December 16, 2023. (Dkt. 3 ¶¶ 5–7). She pleads ten separate claims, including one against the City under *Monell v. Department of Social Services of New York*, which the City now moves to dismiss. 436 U.S. 658 (1978). (Dkt. 3 ¶¶ 100–112; Dkt. 15). For the following reasons, the Court grants the City's Motion to Dismiss [15] without prejudice.

## BACKGROUND

Lucy Washington was driving her car on the 200 block of West Ontario Street in downtown Chicago on December 16, 2023 when Chicago Police Officers Cervantez and Klepacki initiated a traffic stop. (Dkt. 3 ¶¶ 12–13). Prior to the stop, Washington alleges that the Defendant Officers ran her license plate and accessed her personal information, which revealed that she held an Illinois Firearm Owner's Identification Card ("FOID Card") and an expired Concealed Carry License ("CCL"). (*Id.* ¶¶ 15–17). While Washington's CCL was expired at the time of the stop, she had a

1

license renewal application under review with the Illinois State Police Firearms Services Bureau. (*Id.* ¶ 23). Illinois law provides that a CCL remains valid, even after expiration, provided "the licensee has submitted an application to renew the license, and the applicant is otherwise eligible to possess a license." 430 Ill. Comp. Stat. 66/70(c).

Washington alleges that the Defendant Officers had no lawful reason to conduct the traffic stop, and that their sole purpose was to "conduct a fishing expedition for firearm recovery." (Dkt. 3 ¶¶ 14, 18). When the Defendant Officers approached Washington's vehicle, Washington provided them with her license and registration and informed them that she had a firearm in the car. (*Id.* ¶ 22). Washington further volunteered the information about her expired CCL and pending renewal. (*Id.* ¶ 23). Irrespective of that pending renewal, the Defendant Officers arrested Washington and charged her with Aggravated Unlawful Use of a Weapon, a class-four felony. (*Id.* ¶ 26). Washington alleges the Officers made the charging decision willfully, and submitted false police reports to substantiate the charge, conceal the fact that Washington's renewal application was pending, and receive credit for the "felony firearm arrest and recovery." (*Id.* ¶ 27–32). The Defendant Officers not only failed to disclose Washington's CCL renewal on their arrest reports, but also to the Cook County States Attorney's Office. (*Id.* ¶ 40).

As a result of Washington's arrest on December 16, 2023, the Defendant Officers seized her firearm, towed her vehicle, and detained her in Cook County Jail. (*Id.* ¶¶ 45–48). Washington alleges further harm stemming from the public dissemination of her mugshot in online and print media outlets, which listed her as a felony gun offender. (*Id.* ¶ 49). Eventually, the felony charge was dismissed. (*Id.* ¶ 51).

## **LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). The factual allegations "must be enough to raise a right to relief above the speculative level." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). At the 12(b)(6) stage, the Court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in his favor. *Heyde v. Pittenger*, 633 F.3d 512, 516 (7th Cir. 2011). However, "[l]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley*, 671 F.3d at 616 (citing *Iqbal*, 566 U.S. at 678).

## **DISCUSSION**

Washington filed this federal civil rights case against the City and Defendant Officers on December 13, 2024. (Dkt. 3). She alleges five constitutional claims against the Defendant Officers only: Count I: false arrest, Count II: illegal search and seizure, Count III: failure to intervene, Count IV: unlawful pretrial detention, and Count V: conspiracy to deprive constitutional rights. (Dkt. 3 at 7–12). She alleges three state law claims against all Defendants: Count VI: intentional infliction of emotional distress, Count VII: malicious prosecution, and Count VIII: false arrest/imprisonment. (*Id.* at 12–14). Finally, she alleges two claims against the City only: Count IX: indemnification pursuant to 745 Ill. Comp. Stat. 10/9-102 and Count X: *Monell* liability. (Dkt. 3 at 14–16). The City's Motion to Dismiss challenges the sufficiency of Washington's *Monell* claim only. (Dkt. 15 at 1).

3

Plaintiffs can hold municipalities liable under § 1983 "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible for under § 1983." *Monell*, 436 U.S. at 694. Washington can demonstrate the existence of a government policy or custom in one of three ways: "(1) an express policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by an agent with final policymaking authority." *Gonzalez v. McHenry Cnty., Ill.*, 40 F.4th 824, 829 (7th Cir. 2022). She has opted for the second, alleging the City of Chicago has three unwritten policies that caused the constitutional violations she suffered. (Dkt. 3 ¶¶ 102–105). Principally, Washington alleges that the City has a widespread policy of "executing unlawful traffic stops and illegal searches and seizures on vehicles, upon . . . learning the person or citizen's FOID or Concealed Carry License status in order to conduct a search for a firearm." (*Id.* ¶ 2). Washington also alleges that there exists a "Code of Silence" within the Police Department whereby officers turn a blind eye toward constitutional violations and cover them up. (*Id.* ¶ 103). Finally, Washington alleges a broad practice of conducting unlawful traffic stops, primarily targeting African American drivers. (*Id.* ¶¶ 104–05).

To prevail on a widespread practices claim, a plaintiff must show that the municipality defendant engaged in a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). While there is no bright-line test on what amount of evidence is required to sufficiently plead widespread practices claim, plaintiffs must come forward with "more evidence than a single incident," *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005), "or even three," *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)). That said, the number of incidents a plaintiff pleads is not the ultimate guidepost. The key to parsing many of these claims is to differentiate between "isolated

4

wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). For a case to fall in the latter category, a plaintiff must set forth facts that "permit the reasonable inference that [a] practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Washington has not alleged any other incidents involving a Chicago Police Officer who conducted a traffic stop based purely on information about an individual's FOID Card or CCL status. Nor has she alleged any other incidents relevant to her code of silence or racially motivated traffic stops claims. She states in her response to the City's Motion to Dismiss that she provided "countless citations to data, results of investigations, admissions of . . . policymakers, and other empirical evidence of CPD's defective policies and practices," but a searching review of her complaint reveals no such evidence or factual allegations. (Dkt. 21 at 6). The Court is left with nothing more than Washington's own experience of having been arrested and ultimately charged with a felony apparently lacking any factual basis. While these allegations suffice to substantiate many of Washington's other claims, they do not enable the Court to draw any reasonable inferences about how the Defendant Officers' actions were pursuant to a broader governmental policy or practice.

In defense of her *Monell* claim, Washington asserts that her complaint contains factual allegations that go beyond her own individual experience. For example, she points to a paragraph in her complaint that states the Chicago Police Department "has a policy of executing unlawful traffic stops and illegal searches and seizures on vehicles, upon conducting a Secretary of State vehicle license place [sic] check via LEADS and learning the person or citizen's FOID or Concealed Carry License status in order to conduct a search for a firearm." (Dkt. 3 ¶ 102).

5

Washington's complaint includes similar allegations related to "widespread and well-documented polic[ies] and practice[s]" concerning unlawful traffic stops and officers turning a blind eye toward constitutional violations. (*See id.* ¶¶ 103–06). She claims these are not conclusory or unfounded statements, but rather "specific contentions of fact that give rise to an inference of municipal liability." (Dkt. 21 at 4–5). The Court does not see it that way. Washington's broad allegations stating the City has the very policies she must *prove* exist for *Monell* liability to attach does nothing to advance her claim. These statements are quintessential " 'naked assertions' devoid of 'further factual enhancement' " that merely recite the elements of her cause of action. *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). Without any meat on their bones—either through supporting factual scenarios beyond her own, or other meaningful context—these sweeping statements leave the Court with no room to make a logical connection between what happened to Washington and a broader, unspoken practice within the Chicago Police Department.

Finally, Washington resists the notion that she must come forward with more examples than just her own of her alleged widespread practices at the motion to dismiss stage. In this respect, she is partially correct. A plaintiff can plausibly allege a *Monell* claim with reference to incidents only relating to her. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016); *see also Jackson v. Vill. of Justice,* 2020 WL 1530734, *3 (N.D. Ill. Mar. 31, 2020) ("[T]here is no blanket rule that Monell plaintiffs must always allege multiple instances of unconstitutional conduct in order to show that a policy exists. There are certainly contexts in which an allegation of a single instance of wrongdoing is enough to support an inference that a more systemic policy or custom exists."). Courts in the district, however, are generally in agreement that to plausibly state a *Monell* claim, a plaintiff must either "allege more than his own single occurrence" or allege context in

6

addition to a single occurrence "creating an inference of a widespread policy or custom." *Hutton v. City of Chicago*, 2021 WL 809731, at *4 (N.D. Ill. Mar. 3, 2021); *see also Jackson*, 2020 WL 1530734, at *3–4.

There is a meaningful difference between single incident cases that include additional context supporting widespread policy inferences and a case like Washington's. In *White*, for example a plaintiff alleged that Officers obtained his arrest warrant using a "standard printed form that does not require specific factual support[.]" *White*, 829 F.3d at 844. The Seventh Circuit reasoned the plaintiff's allegations were enough because, although he came forward with just one incident of allegedly unlawful conduct, the accompanying use of a fact-less warrant application form permitted a reasonable inference that the same form was used in many other instances, sufficient to plausibly allege a widespread policy. *Id.* Unlike *White*, Washington presents no additional context surrounding her experience that permits a reasonable inference that the Defendant Officers' conduct was pursuant to a widespread policy

With a single incident and no surrounding context, Washington's *Monell* claim fails to cross the line from conceivable to plausible. *Twombly*, 550 U.S. at 570. Her allegations invite the Court to conclude that because she experienced an unlawful stop and felony charge based on her FOID Card or CCL status, the City of Chicago has a widespread and pervasive policy of conducting these stops, protecting officers in their unlawful pursuits, and targeting minority drivers along the way. That is a logical connection the Court cannot draw.

7

**CONCLUSION**

For the reasons set forth above, the City's Motion to Dismiss [15] is granted as to Washington's *Monell* claim. Because Washington might still be able to build a plausible *Monell* claim, particularly with the aid of discovery on her other claims, the dismissal is without prejudice.

_____
Virginia M. Kendall
United States District Judge

Date: May 1, 2025