**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LUCY WASHINGTON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv- 12842 |
| | ) | |
| CITY OF CHICAGO, | ) | |
| Officer CARLY CERVANTEZ #8761 | ) | |
| and Officer RENATA KLEPACKI #12848. | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

NOW COMES the Plaintiff, Lucy Washington, by and through counsel, Brandon Brown and complaining of the defendants, City of Chicago, Carly Cervantez and Renata Klepacki, states as follows:

**INTRODUCTION**

This is a civil action brought under 42 U.S.C. § 1983 seeking damages against defendants to address the deprivations under color of law of the Plaintiff's rights as secured by the United States Constitution and under State Law.

**JURISDICTION AND VENUE**

1. This action is brought under, 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

2. This Court has jurisdiction pursuant to 28 U.S.C. 1331 and 1343(a); pendent jurisdiction is provided under 28 U.S.C. 1367.

3. Venue is proper under 28 U.S.C. 1391(b) because, upon information and belief, all defendants reside in this district, and nearly all of the events giving rise to the claims asserted herein occurred within this district.

1

**PARTIES**

4.    Plaintiff Lucy Washington is a citizen of the United States of America, and at all times relevant resided in Cook County in the State of Illinois.

5.    Defendant City of Chicago ("City") is a municipal corporation organized under the laws of the State of Illinois, and is the principal employer of the Individually-Named Defendants.

6.    Defendant Carly Cervantez and Renata Klepacki ("Defendant Officers") are, at all times relevant, duly licensed Chicago Police Officers employed by Defendant City of Chicago and assigned to the 18th District of the Chicago Police Department. They engaged in the conduct complained of in the course and scope of their employment and under color of law. They are sued in their individual capacities.

**FACTS**

7.    Plaintiff, Lucy Washington is a hard-working mother and law-abiding citizen of the City of Chicago and the State of Illinois.

8.    On or about December 16, 2023, Lucy Washington, was seized, searched and arrested in the City of Chicago by police officers employed by the City of Chicago.

9.    At that time and date, Lucy Washington was operating a motor vehicle in the 18th District of the Chicago Police Department.

10.    Prior to the arrest of Lucy Washington, the Plaintiff Lucy Washington had no prior history of being arrested and of obvious consequence of her lack of criminal arrests, no prior history of ever being convicted of a crime.

11.    Additionally, at the time of the arrest, and all times relevant, Lucy Washington was licensed to possess a firearm and licensed to possess a firearm in her vehicle.

12.    Immediately before she was arrested, or was caused to be arrested, Ms.

2

Washington was not doing anything indicative of criminal activity.

13. Prior to Ms. Washington being seized and arrested there were no specific or articulable facts in existence that would justify her seizure, search, detention and arrest.

14. Lucy Washington's seizure, search and or her arrest was directly caused by the acts, omissions and deliberate indifference of Defendants, Carly Cervantez, Renata Klepacki and the City of Chicago.

15. On December 16, 2023, the Plaintiff Lucy Washington, was the driver of a vehicle traveling at or about 216 W. Ontario Street, Chicago, IL. in the Chicago Police Department 18th District.

16. Defendant Officers conducted a traffic stop of Lucy Washington and her vehicle while located at 216 W. Ontario Street.

17. At the time of the traffic stop on 216 W. Ontario Street, Lucy Washington had not been observed committing a crime or seen to be in violation of any proscriptions as explicitly prohibited under the Illinois Compiled Statutes.

18. At no point, on December 16, 2023, did Lucy Washington ever violate the Illinois Criminal Code.

19. Prior to the traffic stop and seizure, the Defendant Officers accessed Lucy Washington's personal records, specifically her Illinois Firearm Owner's Identification Card and Illinois Concealed Carry License status and information.

20. Upon running Lucy Washington's vehicle license plates, the Defendant Officers learned that Lucy Washington had been previously issued a Firearm Owners Identification Card and a Concealed Carry License.

21. Equipped with this information, the Defendant Officers executed an unlawful

3

pretextual traffic stop in order to conduct a fishing expedition for firearm recovery.

22. The Defendants, without verification, claimed it was for the petty traffic violation of failure to utilize a turn signal.

23. The Defendant Officers activated their Mars lights and curbed Lucy Washington's vehicle at 216 W. Ontario Street in Chicago, IL.

24. Lucy Washington was compliant, coherent and respectful to the Defendant Officers at all times throughout the "traffic investigation."

25. The Defendant Officers approached Lucy Washington's vehicle at the driver and passenger side of the vehicle.

26. Immediately upon the Defendant Officers' approach, Lucy Washington provided the Defendants with her driving credentials and informed the Defendant Officers that there was a firearm located within the vehicle.

27. Lucy Washington additionally informed the Defendant Officers that her concealed carry license had previously expired, but that the renewal application has been submitted and that she has received confirmation that the renewal application was successfully submitted and that she is lawfully licensed to carry her firearm.

28. Under Illinois Law a concealed carry licensee is authorized to carry their firearm following the expiration of the license, when the licensee is otherwise eligible to possess the license and there has been a renewal application submitted and/or filed with the Illinois State Police.

29. Additionally, under Illinois Law, even without the submission of a renewal application, a person found to be in possession of a firearm, who is otherwise eligible, when their license is expired is guilty of a class B misdemeanor.

30.     Despite being expressly aware of the Plaintiff's status, the Defendant Officers arrested the Plaintiff Lucy Washington and charged her with a class 4 felony Aggravated Unlawful Use of a Weapon.

31.     The Defendants made the willful decision not to charge the Plaintiff Lucy Washington with the misdemeanor offense of having an expired license, but rather the felony offense of Aggravated Unlawful Use of a Weapon.

32.     The Defendant willfully elected this course of action, because in order to charge the Plaintiff with the misdemeanor offense,  the Defendants would have to expose the glaring fact that there was no valid basis to arrest, seize and charge Lucy Washington with any crime at all because her renewal application had been submitted and confirmation provided to Lucy Washington.

33.     The Defendants willfully elected this course of action, charging her with a felony, because were the Defendants to allege that Ms. Washington had a concealed carry license that expired, they would have to disclose that, and that she was lawfully in possession of the firearm, and the Defendants would not be credited with the felony firearm arrest and recovery.

34.     In order to cover up their misconduct and unlawful arrest, the Defendant Officers charged Lucy Washington with the felony offense of Aggravated Unlawful Use of a Weapon.

35.     The Defendants additionally drafted false police reports misrepresenting Lucy Washington's concealed carry license status in order to falsely charge her with a felony offense.

36.     Defendant Officer Carly Cervantez drafted an arrest report containing fabrications, omissions and misrepresentations. Among those fabrications and omissions, that Lucy Washington committed the act of Aggravated Unlawful Use of a Weapon, a felony, and did not possess a concealed carry license.

5

37. At no point in any report did Defendant Carly Cervantez disclose or report that Lucy Washington's concealed carry license was expired.

38. At no point in any report did Defendant Renata Klepacki disclose or report that Lucy Washington's concealed carry license was expired.

39. Defendant Officer Carly Cervantez's arrest report was attested to under oath.

40. Defendant Officer Renata Klepacki, along with Carly Cervantez, drafted an original case incident report containing fabrications, omissions and misrepresentations. Among those, that Lucy Washington committed the act of Aggravated Unlawful Use of a Weapon, a felony, and did not possess a concealed carry license.

41. Defendant Officer Carly Cervantez, additionally drafted and filed a felony complaint, with the Circuit Court of Cook County.

42. Defendant Officer Carly Cervantez affixed her signature to the aforementioned felony complaint filed in Cook County, swearing under oath that the Plaintiff Lucy Washington committed the felony offense of Aggravated Unlawful Use of a Weapon.

43. The Defendant Officers completely concealed Lucy Washington's status under the concealed carry act.

44. The Defendant Officers misrepresented facts about the arrest to the Cook County States Attorney's Office and concealed from the Cook County States Attorney's Office, Lucy Washington's status under the concealed carry act.

45. The Defendant Officers concealed from the Court presiding over the prosecution and detention, Lucy Washington's status under the concealed carry act.

46. Subsequent to the unlawful actions of the Defendant Officers, on December 16, 2023, the Plaintiff Lucy Washington was arrested and charged with Aggravated Unlawful Use of

6

a Weapon.

47.     After arresting, or causing the Plaintiff to be arrested, the Defendant Officers commenced criminal proceedings against the Plaintiff.

48.     There was no probable cause or legal justification to commence criminal proceedings against the Plaintiff.

49.     The Defendant Officers seized Lucy Washington's firearm.

50.     This firearm was legally purchased under the laws of the State of Illinois

51.     Additionally, the Defendant Officers seized and towed Lucy Washington's vehicle.

52.     As a result of the Defendants causing Lucy Washington's vehicle to be towed, the City of Chicago charged Lucy Washington a tow fee in excess of two thousand dollars.

53.     The Plaintiff Lucy Washington was incarcerated and transported to the Cook County Jail where she was forced to endure horrific conditions and circumstances.

54.     Lucy Washington's mugshot was also publicly dispersed, where her face and mugshots were displayed online and in print publications, as being a felony gun offender.

55.     The misconduct of the Defendants was eventually revealed and exposed.

56.     The criminal proceedings against the Plaintiff were later dismissed in a manner indicative of her innocence.

57.     Following the dismissal, a Judge in the Circuit Court of Cook County, ordered the return of the aforementioned seized firearm to its rightful owner Lucy Washington.

58.     Despite the Court Order, the Defendants did not comply with the Court's order to return the firearm.

59.     At the time that the Plaintiff was arrested, the Defendant Officers knew that there

was no probable cause or legal justification to seize, search, arrest and/or commence criminal proceedings against the Plaintiff Lucy Washington.

60.    The acts of Defendant Officers were intentional, willful and wanton.

*Chicago Police Department and 18th District*

61.    The Illinois Department of Transportation calculated that, in 2022, Black drivers were 3.84 times more likely to be stopped than white drivers in Chicago. *See Illinois Traffic and Pedestrian Stop Study* 2022 Annual Report: Traffic Stops. Part II Detailed Tables.

62.    The Illinois Department of Transportation calculated that, in 2023, Black drivers were 3.75 times more likely to be stopped than white drivers in Chicago. *See Illinois Traffic and Pedestrian Stop Study* 2023 Annual Report: Traffic Stops. Part II Detailed Tables.

63.    The Illinois Department of Transportation calculated that, in 2024, Black drivers were 4.11 times more likely to be stopped than white drivers in Chicago. *See Illinois Traffic and Pedestrian Stop Study* 2024 Annual Report: Traffic Stops. Part II Detailed Tables.

64.    In December of 2024, the 18th District's pattern and practice of misconduct was exposed in a public letter to the District Commander, identifying racial disparity in traffic stops, abuse of pretextual stops, bias and racial profiling, including disrespectful conduct towards civilians, profanities, insults and threats. Where 90% of the complaints involved African-Americans, despite African-Americans comprising 6% of the 18th District's population. *See Michael Barz Letter*, December 27, 2024.

*State Representative Curtis Tarver Arrested*

65.    On November 18, 2019, Curtis Tarver, an "African-American" male was arrested and charged with unlawfully possessing a firearm. Like Lucy Washington, Mr. Tarver was seized by the Chicago Police while operating a motor vehicle.

8

66. The alleged basis for the initial seizure was purportedly a City of Chicago ordinance violation, for a headlamp malfunction.

67. The alleged headlamp violation was listed under the City of Chicago Ordinance, and is not a criminal violation, nor is it punishable by jail time.

68. During the headlamp investigation, the Chicago Police started questioning Curtis Tarver about firearm possession. The Chicago Police then took possession of Mr. Tarver's weapon and placed Mr. Tarver under arrest.

69. At the time of the arrest, Mr. Tarver provided proof and verification of his concealed carry license and his right to possess the firearm. Nonetheless, Curtis Tarver, a public servant, attorney, and person of unimpeachable integrity, was arrested, charged and issued a bond for his freedom, pending the resolution of the subsequent criminal prosecution.

70. All charges, including the headlamp allegation, were subsequently dismissed in the Circuit Court of Cook County. Mr. Tarver, through his attorney demanded trial.

### *Louis McWilliams Arrested*

71. On April 10, 2025, Louis McWilliams, an "African-American" male was arrested and charged with unlawfully possessing a firearm. Similarly to Lucy Washington, Mr. McWilliams was seized by the Chicago Police while operating a motor vehicle.

72. The alleged basis for the initial seizure was purportedly a City of Chicago ordinance violation, for a display of registration.

73. The alleged registration violation was listed under the City of Chicago Ordinance, and is not a criminal violation, nor is it punishable by jail time.

74. During the registration investigation, the Chicago Police started questioning Mr. McWilliams about firearm possession. The Chicago Police then took possession of Mr.

McWilliams' weapons and placed Mr. McWilliams under arrest.

75.     At the time of the arrest, Mr. McWilliams provided proof and verification of his concealed carry license and his right to possess the firearm. Nonetheless, Louis McWilliams, was arrested, charged and issued a bond for his freedom, pending the resolution of the subsequent criminal prosecution.

76.     All charges, including the headlamp allegation, were subsequently dismissed in the Circuit Court of Cook County. Mr. McWilliams, through his attorney demanded trial.

### *Richard Roe and Jane Doe Arrested*[1]

77.     Within the past calendar year, Richard Roe, an "African-American" male was arrested and charged with unlawfully possessing a firearm. Similarly to Lucy Washington, Mr. Roe was seized by the Chicago Police while operating a motor vehicle.

78.     The alleged basis for the initial seizure was purportedly due to an equipment violation of the Illinois Vehicle Code, but classified as "Class P" for petty offense.

79.     The alleged Class P violation was listed under the Illinois Vehicle Code, and is not a criminal violation, nor is it punishable by jail time.

80.     During the petty equipment violation investigation, the Chicago Police started questioning Mr. Roe about firearm possession. The Chicago Police then took possession of Mr. Roe's weapon and placed Mr. Roe under arrest.

81.     At the time of the arrest, Mr. Roe provided that he was licensed to possess the firearm. Nonetheless, Mr. Roe, was arrested, charged and issued a bond for his freedom, pending

---

[1] The Plaintiff pleads these allegations under pseudonyms without specificity, as not to provoke even the appearance, of unjust prosecution from fear of future civil litigation, as these matters are pending in state criminal court. Plaintiff makes these allegations consistent with Rule 11 and in good faith. The Plaintiff can verify charging instruments and firearm licenses upon request. The overwhelming majority of the records should be in the possession of the Defendant City of Chicago.

the resolution of the subsequent criminal prosecution.

82. Similar to Lucy Washington, Richard Roe had never been arrested before. Curiously enough, there was no record of the officers being notified of Mr. Roe's firearm license in the narrative section of the arrest report.

83. Within the past calendar year, Jane Doe, an "African-American" female was arrested and charged with unlawfully possessing a firearm. Similarly to Lucy Washington, Ms. Doe was seized by the Chicago Police while operating a motor vehicle.

84. The alleged basis for the initial seizure was purportedly a City of Chicago ordinance violation, for a display of registration.

85. The alleged registration violation was listed under the City of Chicago Ordinance, and is not a criminal violation, nor is it punishable by jail time.

86. During the ordinance investigation, Jane Doe was arrested for possession of a firearm.

87. At the time of the arrest, Ms. Doe provided that she was licensed to possess the firearm. Nonetheless, Ms. Doe, was arrested, charged and issued a bond for her freedom, pending the resolution of the subsequent criminal prosecution.

88. The City of Chicago continually enables its officers, employees and others, including the Defendants to engage in misconduct, by incentivizing the Defendants and others with overtime pay and other acknowledgements for effectuating arrests at all costs, including the arrests of law-abiding citizens for firearm possession, for legally purchased firearms, in spite of their second amendment rights to legally possess a firearm.

89. As a direct and proximate result of the unlawful actions of the defendants, Plaintiff was injured, including physical injuries, pain and suffering, humiliation, embarrassment,

11

fear, emotional trauma, mental anguish, the deprivation of her constitutional rights and dignity, interference with a normal life, lost time, lost property and attorneys' fees.

**COUNT I: 42 U.S.C. § 1983 - False Arrest**
**Against Defendant Officers**

90. Plaintiff re-alleges paragraphs 1-89 as if fully set forth herein.

91. The actions of Defendant Officers, described above, knowingly caused Plaintiff to be arrested and imprisoned without probable cause or any other justification, constituted a deliberate indifference to Plaintiff's right under the U.S. Constitution in violation of the Fourth and Fourteenth Amendment.

92. As a proximate result of the above-detailed actions, Plaintiff was injured, including the deprivation of her liberty and the taking of her person. In addition, the violations proximately caused Plaintiff mental anguish, embarrassment, and humiliation, exposed her to public scandal and disgrace, and caused her to incur various expenses, including but not limited to attorneys' fees, all to Plaintiff's damage.

WHEREFORE the Plaintiff, Lucy Washington, pursuant to 42 U.S.C. §1983, demands judgment against Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

**COUNT II: 42 U.S.C. § 1983 - Illegal Search and Seizure**
**Against Defendant Officers**

93. Plaintiff re-alleges paragraphs 1-89 as if fully set forth herein.

94. The actions of the Defendant Officers constituted an unreasonable and unjustifiable seizure and unjustifiable search of the Plaintiff, thus violating her rights under the Fourth and Fourteenth Amendment to the Constitution of the United States and 42. U.S.C. § 1983.

12

95.     The search and seizure of Plaintiff was performed willfully and wantonly by Defendant Officers, as detailed above, were in violation of Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States and 42 U.S.C. §1983.

96.     As a direct and proximate result of the above-detailed actions of the defendants, Plaintiff was injured, including the deprivation of her liberty and the taking of her property. In addition, the violations proximately caused Plaintiff to suffer, without limitation, pain, suffering, humiliation, emotional distress, mental anguish, exposed her to public scandal and disgrace, and financial loss.

WHEREFORE the Plaintiff, Lucy Washington, pursuant to 42 U.S.C. §1983, demands judgment against Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

**COUNT III: 42 U.S.C. § 1983 – Failure to Intervene**
**Against Defendant Officers**

97.     Plaintiff re-alleges paragraphs 1-89 as if fully set forth herein.

98.     The actions of the Defendant Officers constituted an unreasonable and unjustifiable seizure and unjustifiable search of the Plaintiff, thus violating her rights under the Fourth Amendment to the Constitution of the United States and 42. U.S.C. § 1983.

99.     The actions of Defendant Officers, causing the arrest and imprisonment of the Plaintiff without probable cause or any other justification, constituted a deliberate indifference to Plaintiff s right under the U.S. Constitution in violation of the Fourth and Fourteenth Amendment.

100.    The Defendant Officer Cervantez failed to intervene when Defendant Officer

13

Klepacki illegally and unjustifiably seized and searched Lucy Washington and her property, as alleged above, despite there being no legal basis for such action.

101. The Defendant Officer Cervantez failed to intervene when Defendant Officer Klepacki illegally and unjustifiably arrested and maliciously prosecuted Lucy Washington, as alleged above, despite there being no legal basis for such action.

102. The Defendant Officer Klepacki failed to intervene when Defendant Officer Cervantez illegally and unjustifiably seized and searched Lucy Washington and her property, as alleged above, despite there being no legal basis for such action.

103. The Defendant Officer Klepacki failed to intervene when Defendant Officer Cervantez illegally and unjustifiably arrested and maliciously prosecuted Lucy Washington, as alleged above, despite there being no legal basis for such action

104. The false arrest, search and seizure of Plaintiff was performed willfully and wantonly by Defendant Officers, as detailed above, were in violation of Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States and 42 U.S.C. §1983.

105. As a direct and proximate result of the above-detailed actions of the defendants, Plaintiff was injured, including the deprivation of her liberty and the taking of her property. In addition, the violations proximately caused Plaintiff to suffer, without limitation, pain, suffering, humiliation, emotional distress, mental anguish, exposed her to public scandal and disgrace, and financial loss.

WHEREFORE the Plaintiff, Lucy Washington, pursuant to 42 U.S.C. §1983, demands judgment against Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

## COUNT IV: 42 U.S.C. § 1983 – Unlawful Pretrial Detention
### Against Defendant Officers

106. Plaintiff re-alleges paragraphs 1-89 as if fully set forth herein.

107. Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and they submitted reports and statements to prosecutors with the intent of instituting and continuing judicial proceedings against the Plaintiff.

108. Defendant Officers caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause.

109. As described more fully above, Defendant Officers, while acting individually, jointly and in conspiracy with other unnamed individuals, deprived Plaintiff of her constitutional rights.

110. Defendant Officers' misconduct directly and proximately caused violations of Plaintiff's constitutional rights, loss of liberty, monetary expenses, emotional distress, and other injuries.

111. The misconduct described here was objectively unreasonable and undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

WHEREFORE the Plaintiff, Lucy Washington, pursuant to 42 U.S.C. §1983, demands judgment against Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

## COUNT V: 42 U.S.C. § 1983 - Conspiracy to Deprive Constitutional Rights
### Against Defendant Officers

112. Plaintiff re-alleges paragraphs 1-89 as if fully set forth herein.

15

113.     As described more fully above, Defendant Officers reached an agreement amongst themselves to unlawfully search, seize, and falsely arrest the Plaintiff and to thereby deprive Plaintiff of her Constitutional rights, all as described more fully throughout this complaint.

114.     In this manner, Defendant Officers, acting in concert with each other, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

115.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

116.     As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and she suffered damages, severe emotional distress and anguish, and a deprivation of her liberty, as is more fully alleged above.

117.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff and others.

118.     As a proximate result of the above-detailed actions of Defendant Officers, Plaintiff was injured, including the deprivation of her liberty. In addition, the violations proximately caused the Plaintiff mental anguish, embarrassment and humiliation, exposed her to public scandal and disgrace, and caused her to incur various expenses, all to Plaintiff's damage.

WHEREFORE the Plaintiff, Lucy Washington, demands judgment against Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### COUNT VI: Intentional Infliction of Emotional Distress (State Law Claim)
### Against All Defendants

119.     Plaintiff re-alleges paragraphs 1-89 as if fully set forth herein.

16

120.     The above detailed conduct by the Defendant Officers was extreme and outrageous and in excess of the Defendant Officers' authority.

121.     The Defendant Officers performed the acts detailed above with the intent of inflicting severe emotional distress or with knowledge of the high probability that the conduct would cause such distress.

122.     As a direct and proximate result of this conduct, the Plaintiff did suffer severe emotional distress resulting in injury to the Plaintiff's mind body and nervous system and causing physical pain, emotional suffering, loss of sleep, mental anguish, grief, fright and anxiety.

WHEREFORE the Plaintiff, Lucy Washington, demands judgment against the Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### COUNT VII: Malicious Prosecution (State Law Claim)
**Against All Defendants**

123.     Plaintiff re-alleges paragraphs 1-89 as if fully set forth herein.

124.     By the actions detailed above, Defendant Officers knowingly sought to and did in fact maliciously prosecute Plaintiff on charges for which they knew there was no probable cause.

125.     Defendant City of Chicago is sued in this Count pursuant to the doctrine of respondeat superior, in that Defendant Officers performed the actions Complained of while on duty and/or in the employ of Defendant City of Chicago, and while acting in the scope of this employment.

126.     As a direct and proximate result of the malicious prosecution, Plaintiff was damaged, including the value of her lost liberty, exposure to public scandal and disgrace, damage to her reputation, mental and emotional suffering,  humiliation, embarrassment, and

17

anguish.

WHEREFORE the Plaintiff, Lucy Washington, demands judgment against the Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### COUNT VIII: False Arrest/Imprisonment (State Claim)
### Against All Defendants

127.    Plaintiff re-alleges paragraphs 1-89 as if fully set forth herein.

128.    As described above, the Defendant Officers arrested and/or imprisoned the Plaintiff, or caused the Plaintiff to be arrested and/or imprisoned, without a warrant, without probable cause and without legal justification. Due to the arrest, the Plaintiff had her liberty to move about restrained by the Defendant Officers.

129.    The misconduct was undertaken by the Defendant Officers under color of law, under the course and scope of their employment as police officers for Defendant City, was objectively unreasonable, with malice, and was undertaken intentionally and was willful and wanton.

130.    Defendant City is sued herein pursuant to respondeat superior.

131.    As a direct and proximate result of the acts of the Defendant Officers, employees of Defendant City, the Plaintiff was injured, suffered emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, and other damages.

WHEREFORE the Plaintiff, Lucy Washington, demands judgment against the Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### COUNT IX: 745 ILCS 10/9-102 - Indemnification
### Against Defendant City of Chicago

132.    Plaintiffs reallege each of the foregoing paragraphs as if fully set forth herein.

18

133. Defendant City of Chicago is the employer of the Defendant Officers.

134. Defendant Officers committed the acts alleged above under color of law and in the scope of their employment with the City of Chicago.

WHEREFORE the Plaintiff, Lucy Washington, demands that, should Defendant Officers be found liable on one or more of the claims set forth above, pursuant to 745 ILCS 10/9-102, the Defendant CITY OF CHICAGO be found liable for any judgment Plaintiffs obtain, as well as attorneys' fees and costs awarded.

**COUNT X – *MONELL* LIABILITY – Pattern and Practice of
Unconstitutional Traffic Stops and Illegal Searches and Seizures**
(Against the City)

135. Plaintiff realleges each of the foregoing paragraphs as if fully set forth herein.

136. The Chicago Police Department is a subsidiary division of Defendant City of Chicago. The City maintains and exercises exclusive control over the Department, its policies and procedures, as well as the conduct of all of its employees, including Defendants.

137. The Chicago Police Department has a policy of executing unlawful traffic stops and illegal searches and seizures of vehicles and the vehicle's occupant upon conducting a Secretary of State vehicle license place check via LEADS and learning the person or citizen's FOID or Concealed Carry License status in order to conduct a search for a firearm.

138. At the time of this incident and prior thereto, there existed within the Chicago Police Department a widespread and well-documented policy and practice of covering up and turning a blind eye to officer misconduct, and failing to legitimately investigate or discipline officers who engage in misconduct, otherwise known as the Code of Silence.

139. There likewise existed a widespread policy and practice of engaging in unlawful traffic stops. The Chicago Police Department routinely target African-American drivers through pretextual traffic stops with underlying "alleged" minor traffic violations.

19

140. The Chicago Police Department has a policy, practice and history of making unconstitutional stops for minor traffic violations so that the Officers can intentionally escalate the traffic stop into a full unconstitutional search.

141. The Chicago Police Department has a policy, practice and history of making unconstitutional seizures and arrests of African American motorists for firearm possession, despite their rights to lawfully possess a firearm.

142. The City of Chicago has a policy, practice and history of providing increased or supplemental pay, including overtime to Chicago Police Officers who engage in unlawful seizures and arrests for firearms lawfully purchased and possessed.

143. These widespread policies and practices are well known to, tolerated by, and/or enforced by policymakers throughout all levels of the Chicago Police Department and the City of Chicago administration, who have yet to take effective measures to address the systemic problems related to the Department.

144. As a result of these policies and practices, the City allows officers to act with impunity in engaging in misconduct, knowing that their fellow officers, supervisors, and City officials will turn a blind eye to and cover up their actions.

145. Otherwise, well-intentioned officers who would face no discipline for simply telling the truth frequently lie to protect officers who engage in misconduct.

146. These policies and practices were the direct and proximate cause of, and the moving force behind, illegal search, seizure and the unlawful pretrial detention and the conspiracy among the Defendant Officers that led to the unlawful conduct taken against the Plaintiff.

147. The Defendant Officers engaged in this egregious misconduct knowing they would not be questioned or disciplined and that their fellow officers, supervisors, and City Officials

would turn a blind eye to and cover up their actions.

148.    The City's failure and refusal to legitimately address officer misconduct, demonstrates a deliberate indifference to and tacit approval of unlawful dishonest actions of members of its Police Department, including the conspiracy to deprive Lucy Washington of her Constitutional Rights, committed by the Defendant Officers.

149.    As a direct and proximate result of the City's unconstitutional policies and practices, Plaintiff Lucy Washington suffered serious injuries, including mental anguish, embarrassment, and humiliation, exposed her to public scandal and disgrace, and caused her to incur various expenses, including but not limited to attorneys' fees, all to Plaintiff's damage.

WHEREFORE the Plaintiff, Lucy Washington, pursuant to 42 U.S.C. §1983 demands judgment against the Defendants, City of Chicago for compensatory damages, punitive damages, the costs of this action and attorneys' fees, injunctive relief that will address the Defendant's widespread policies and any such other and further relief as this Court deems equitable and just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully Submitted,

**LUCY WASHINGTON**

By:    /s/ Brandon Brown
          *Plaintiff's Attorney*

THE BROWN LAW LTD.
4455 S. King Drive
Suite 100A
Chicago, Illinois 60653
T: (773) 624-8366
F: (773) 624-8365
E: bbrown@thebrownlaw.com