**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LUCY WASHINGTON,<br><br>    *Plaintiff*,<br><br> v.<br><br>CITY OF CHICAGO, CARLY<br>CERVANTEZ, and RENATA KLEPACKI<br><br>    *Defendants*. | No. 24 C 12842<br><br>Chief Judge Virginia M. Kendall |

**CITY OF CHICAGO'S MOTION TO DISMISS COUNT X OF**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant City of Chicago ("the City"), through its undersigned counsel, respectfully moves this Court to dismiss Count X of Plaintiff's First Amended Complaint ("FAC") (Dkt. 67) pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of its Motion, the City states as follows:

**INTRODUCTION**

On or about December 16, 2023, two Chicago police officers, Carly Cervantez and Renata Klepacki ("Defendant Officers"), conducted a traffic stop of Plaintiff's vehicle during which Plaintiff was arrested. (Dkt. 67, ¶¶ 6, 8). Based on this traffic stop and arrest, Plaintiff filed this lawsuit against the Defendant Officers and the City, which pleads ten counts, including Count X brought against the City under *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978). Following the City's prior motion to dismiss (Dkt. 15), this Court dismissed Plaintiff's *Monell* claim for failure to plead a plausible widespread practices claim against the City. (Dkt. 26). As originally pled, Plaintiff's *Monell* claim relied solely on her own experience during the traffic stop and arrest mentioned above. (*Id*. at p. 5). Given this single incident and with no surrounding context, this Court found that Plaintiff's allegations did not "enable the Court to draw any

1

reasonable inferences about how the Defendant Officers' actions were pursuant to a broader governmental policy or practice." (*Id.* at p. 5).

Subsequently, Plaintiff filed her FAC. (Dkt. 67). Plaintiff similarly alleges that she suffered a constitutional injury due to multiple "widespread" practices maintained by the City, which largely relate to unlawful traffic stops. (*Id.* ¶¶ 137-142). In an attempt to bolster her *Monell* claim, and in addition to her own incident, Plaintiff now points to four separate traffic stops involving other individuals that occurred over a span of approximately seven years. (*Id.* ¶¶ 65-87). Despite the addition of these other traffic stops, Plaintiff's *Monell* claim still falls short. Plaintiff fails to establish the existence of any continuing, widespread, and persistent pattern of unconstitutional conduct so permanent and well-settled as to constitute a custom with the force of law. Accordingly, Count X should be dismissed.

**LEGAL STANDARD**

When considering motions brought pursuant to Rule 12(b)(6), all well-pleaded allegations within the complaint are read in the light most favorable to the plaintiff and presumed true. *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). This presumption is not extended to "legal conclusions, or threadbare recitals of a cause of action, supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013). A defendant may move to dismiss if the plaintiff has failed to state a claim upon which relief has been granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts, accepted as true, "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

The Court need not strain "to find favorable inferences that are not apparent on the face of the complaint." *Coates v. Illinois State Bd. of Ed.*, 559 F.2d 445, 447 (7th Cir. 1977). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S., at 678 (quoting *Twombly*, 550 U.S., at 557)(brackets omitted)(internal quotation marks omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*.

### **ARGUMENT**

To allege a *Monell* claim, a plaintiff must show constitutional injuries caused by (1) the enforcement of an express policy of the City, (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice of the City, or (3) the actions of a person with final policymaking authority. *See Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2029). Plaintiff's claim is based on the second theory. For her theory to survive a motion to dismiss, Plaintiff must first plead factual content sufficient to establish the existence of a widespread practice. Plaintiff fails to do so.

**A. Plaintif's *Monell* Claim Fails to Establish the Existence of a Widespread Practice.**

To properly allege such a widespread practices claim, plaintiff must plead factual content to allow the court to draw the reasonable inference that the City maintains the problematic policy or practice in question. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (citing *Iqbal*, 556 U.S. at 681). This entails "provid[ing] some specific facts to support the legal claims asserted in the complaint." *Id.*; *see also, e.g., Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Although the

3

specificity of these facts is not easily quantified, there must be "enough detail about the subject-matter of the case to present a story that holds together." *McCauley*, 671 F.3d at 616.

Here, Plaintiff must plead sufficient non-conclusory facts to allow this Court to infer that the City (1) maintained a widespread practice that (2) served to bring about her constitutional injuries. Plaintiff identifies five separate but related widespread practices. (Dkt. 67 ¶¶ 137-139, 141-142). Plaintiff first alleges the City has a widespread practice of "executing unlawful traffic stops . . . upon conducting a Secretary of State vehicle license place check via LEADS and learning the person or citizen's FOID or Concealed Carry License status in order to conduct a search for a firearm." (*Id*. ¶ 137). Second, Plaintiff alleges a "code of silence" exists within the Chicago Police Department ("CPD"). (*Id*. ¶ 138). Third, Plaintiff alleges the City maintains a widespread practice of targeting African-American drivers with unlawful traffic stops. (*Id*. ¶ 139). Fourth, Plaintiff alleges that there is a policy of "making unconstitutional seizures and arrests of African-American motorists for firearm possession, despite their rights to lawfully possess a firearm." (*Id*. ¶ 141). Lastly, Plaintiff alleges that the City has a policy of "providing increased or supplemental pay, including overtime to Chicago police officers who engage in unlawful seizures and arrests for firearms." (*Id*. ¶ 142).

To support the existence of the above-stated widespread practices, Plaintiff cites to four other incidents where the CPD conducted a traffic stop, arrested, and charged an African-American driver with unlawful possession of a firearm. (Dkt. 67 ¶¶ 65-87). Namely, (1) Curtis Tarver, (2) Louis McWilliams, (3) Richard Roe, and (4) Jane Doe. (*Id*. ¶¶ 65, 71, 77, 83). Plaintiff's reliance on these other incidents is misplaced.

For instance, Plaintiff does not allege that Tarver, McWilliams, Roe, or Doe were pulled over after a CPD officer conducted a license place check via LEADS, which revealed that Tarver's,

4

McWilliams,' Roe's, or Doe's FOID card or CCL was expired or suspended. (*Id.* ¶¶ 65-87). Plaintiff does not allege that Tarver, McWilliams, Roe, or Doe were targeted, stopped, seized, or arrested due to their race. (*Id.*). Plaintiff does not allege that either Tarver, McWilliams, Roe, or Doe were somehow harmed by a "code of silence" with the CPD. (*Id.*). Lastly, Plaintiff does not cite a single incident of a CPD officer receiving increased, supplemental, or overtime pay in connection with any of the traffic stops alleged in the FAC. (*Id.*). Given the omission of any allegation to support that Tarver, McWilliams, Roe, or Doe were stopped in connection with a common widespread practice maintained by the City, there is no factual content above and beyond Plaintiff's own incident which allows "the court to draw the reasonable inference that the City maintains the problematic policy or practice in question." *McCauley*, 671 F.3d at 616 (citing *Iqbal*, 556 U.S. at 681).

Not only does Plaintiff's FAC fail to provide the "reasonable inferences" needed to draw the logical connection that Tarver, McWilliams, Roe, or Doe were victims of the purported widespread practices advanced by Plaintiff, Plaintiff's allegations reveal the opposite. Plaintiff allegations reveal that Traver was not stopped because of any claimed widespread practice. He was stopped because the vehicle he was driving had a broken headlamp in violation of a City ordinance. (*Id.* ¶¶ 66-68). The same is true for McWilliams, Roe, and Doe. Plaintiff alleges that McWilliams was stopped because his vehicle failed to display the necessary registration in violation of a City ordinance and/or a headlamp malfunction. (*Id.* ¶¶ 72-73). Roe was stopped because his vehicle suffered from some undisclosed equipment failure. (*Id.* ¶¶ 78-79). And Doe was stopped because her vehicle failed to display the necessary registration in violation of a City ordinance. (*Id.* ¶¶ 84-85).

5

In the end, Plaintiff is left with only the allegations of her own incident, which has been already deemed to be insufficient to state a plausible widespread practice. (Dkt. 26). Accordingly, Plaintiff has failed to show that the City has engaged in a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010); *see also, e.g.*, *Scott v. Village of Riverdale*, 22 C 2936, 2022 WL 4182489, at 2 (N.D. Ill. September 13, 2022) (dismissing *Monell* claim where the plaintiff alleged village officers maintained a "code of silence" and failed to discipline and train officers because he "makes no mention of any other, similar incidents") (Coleman, J.); *Hutton v. City of Chicago*, 20 cv 809731, 2021 WL 809731, at *3 (N.D. Ill. March 3, 2021 (dismissing *Monell* claim where the plaintiff "has not alleged any facts, other than his own single incident") (Dow, J.); *Jackson v. City of Chicago et al.*, 2021 WL 3709185, 20 C 5630 (N.D. Ill. August 20, 2021)(Kocoras, J.)("Jackson failed to allege enough to support an inference of an actual policy or custom spanning the entire Chicago Police Department."); *Roldan v. Town of Cicero et al.*, 2021 WL 3674615, 17 C 3707 (N.D. Ill. August 19, 2021)(Kness, J.) ("Plaintiff has not tied his allegations regarding the individual defendant officers to a widespread practice that permeates a critical mass of the police department as a whole."); *Jordan v. City of Chicago et al.*, 2021 WL 1962385, 20 C 4012, at *4 (May 17, 2021)(Gottschall, J.)(stating the plaintiff "must do more than plead that the City had a code of silence"); *Harris v. City of Chicago*, 2021 WL 1192438, 20 V 452 (N.D. Ill. March 30, 2021)(Chang, J.)("Naked assertions devoid of factual enhancement and formulaic recitations of the elements of a *Monell* claim are all ( Plaintiff) has offered"). Accordingly, Count X should be dismissed.

### B. The Four Additional Incidents Do Not Establish a Widespread Practice.

Even if this Court finds the four additional traffic stops factually similar to Plaintiff's experience, five total traffic stop incidents occurring in the City of Chicago over a span of

approximately seven years is not enough factual support to establish a common widespread practice. Although "there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability," it is well-established in the Seventh Circuit that "it must be more than one instance, or even three." *Miller v. City of Harvey*, No. 13 C 9257, 2015 WL 5144476, at \*4 (N.D. Ill. Aug. 31, 2015), quoting *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009); see also *Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005) ("[Three] incidents do not amount to a widespread practice that is permanent and well settled so as to constitute an unconstitutional custom or policy about which the sheriff was deliberately indifferent); *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) ("If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer there is a policy at work."); *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001)(Complaint must be dismissed where nothing indicates that a few incidents ought to have come to the attention of policymakers); *Palka v. City of Chicago*, 662 F.3d 428, 435 (7th Cir. 2011) ("two alleged instances of discrimination do not constitute a widespread pattern or practice sufficient to subject the City to liability"); *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) ("three incidents were too few to indicate that the City had a widespread custom of which City policymakers had reason to be aware").

Accordingly, the alleged incidents of Tarver, McWilliams, Roe, and Doe in addition to Plaintiff's own experience, do not create a reasonable inference supporting Plaintiff's allegations regarding the existence of the purported widespread practices at issue. Therefore, Count X should be dismissed.

**C. Plaintif's Concedes that neither Tarver, McWilliams, Roe, nor Doe Suffered a Constitutional Injury Caused by an Unlawful Traffic Stop.**

For the same reasons articulated above, Plaintiff concedes that neither Tarver, McWilliams, Roe, nor Doe suffered a constitutional injury from an unlawful traffic stop that was predicated on any of the alleged widespread practices. Plaintiff alleges that in each of those incidents the CPD had a proper, lawful, and constitutional basis for conducting the underlying traffic stop. *See City of Los Angles v. Heller*, 475 U.S. 796, 799 (1986); *see also Petty v. City of Chicago*, 416, 424-25 (7th Cir. 2014) (stating "there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [a plaintiff's] constitutional rights."); *Sallenger v. City of Springfield*, 630 F. 3d 499, 594 (7th Cir. 2010 ("[A] municipality cannot be liable under *Monell* when there is no underlying constitution violation by a municipal employee."). Without an underlying constitutional injury, the alleged incidents of Tarver, McWilliams, Roe, and Doe are not sufficiently similar to Plaintiff's own experience, and, thus, lend no support to her allegations regarding the existence of the purported widespread practices at issue.

**D. Plaintiff Has Not Plausibly Alleged that the City Caused the Constitutional Injury or was Deliberately Indifferent to her Constitutional Rights.**

Even assuming *arguendo* that Plaintiff has alleged the existence of a widespread practice, Plaintiff still has to establish that the City's policymakers were deliberately indifferent to the practice or practices in question. In order to assert a *Monell* claim, Plaintiff must plausibly allege that the City's widespread practice or practices were adopted with "deliberate indifference" to their "known or obvious consequences." *Rasche v. Vill. of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003).

Here, Plaintiff's deliberate indifference allegations are wholly conclusory. Plaintiff states "[t]hese widespread policies and practices are well known to, tolerated by, and/or enforced by policymakers throughout all levels of the Chicago Police Department and the City of Chicago administration, who have yet to take effective measure to address the systemic problems related to

8

the Department." (Dkt 67 at ¶ 143). Plaintiff then states that the City's refusal to address misconduct demonstrates deliberate indifference. (*Id*. at ¶ 148). To meet the standards of *Twombly*, *Iqbal*, *McCauley* and their progeny, Plaintiff must demonstrate – through factual allegations –that the City's policymakers knew that there was alleged widespread practice and chose to effectively adopt that practice as its own. And that the City's policymakers failed to act despite this knowledge. Here, Plaintiff does not allege any factual support to demonstrate that City policymakers knew and approved of the alleged widespread practices Plaintiff seeks to attribute to the City. Plaintiff does not even attempt to comply with this *Monell* requirement. Accordingly, Plaintiff's *Monell* claim should be dismissed.

### E. Plaintiff Do Not Allege Any Facts to Support That City Policymakers Had Actual or Constructive Knowledge of the Widespread Practices Alleged by Plaintiff.

In addition to the allegations regarding the four other traffic stops, in her FAC, Plaintiff makes reference to - without any explanation or application to her Monel claim – three reports prepared by the Illinois Department of Transportation in 2022, 2023, and 2024 (the "IDOT Reports"), and a December 27, 2024 letter to the Commander of the 18th District (the "December 2024 Letter"). The IDOT data comprises a raw data assessment without context or explanation. As alleged, it merely indicates a probability of the likeliness that one race "is more likely to be stopped" compared to another race. (*See*, Dkt. 67 ¶¶ 61-63). The allegations are not indicative of seizures without cause (unlawful traffic stops predicated on license plate checks), a code of silence, a widespread practice of "targeting" African American drivers with "unlawful traffic stops," or a "policy of arrests of African American motorists for firearm possession. Additionally, the "December 2024 Letter" relates to one particular 18th District Tactical team, yet there is no allegation in the Complaint connecting those COPA allegations to the practices alleged here or to the defendant offices. (*Id.* at ¶ 64). Consequently, Plaintiff does not allege any facts suggesting

9

that either the IDOT Reports or the December 2024 Letter put City policy makers on notice of the existence of any of the five purported widespread practices alleged in her FAC. These allegations fail to rise to a level of facial plausibility that City policymakers had actual or constructive knowledge of the widespread practices alleged by Plaintiff.

### F. Plaintiff Fails to Allege that the City's Widespread Practice was the "Moving Force" Leading to Her Specific Constitutional Injury.

Plaintiff's *Monell* claim also fails at the final prong. A *Monell* plaintiff must also prove that the municipality's action was the "moving force" behind the constitutional violation. *Brown*, 520 U.S. at 404. This rigorous causation standard guards against backsliding into *respondeat* superior liability. *Id.* at 405. To meet this standard, the plaintiff must show a "direct causal link" between the challenged municipal action and the violation of his constitutional rights. *Id.* at 404. Plaintiff's "moving force"' allegations are completely conclusory.

A 'moving force' must be pleaded with enough facts to allow the court to infer a 'direct causal link between the municipal action and the deprivation of federal rights' or constitutional injury." *Andersen v. Allen*, *et al*., 2020 WL 5891406 at *3 (N.D. Ill. Oct. 5, 2020) (citing *Bd. of Cty. Commr's,* 520 U.S. at 397.) Here, Plaintiff's allegations related to moving force are sparse and conclusory. Plaintiff merely states, without any factual support, that her injuries that she suffered were "a direct and proximate result of the City's unconstitutional policies and practices." (Dkt. 67 ¶ 143). Plaintiff has failed to allege sufficient facts to create a reasonable inference that any purported policies or customs were the "moving force" behind the constitutional claims at issue here. Therefore, her *Monell* claims should be dismissed.

## CONCLUSION

For the reasons stated above, the City of Chicago respectfully request that this Court dismiss Count X of Plaintiff's First Amended Complaint and grant any further relief deemed appropriate and just.

Dated: May 28, 2026      Respectfully submitted,

               **City of Chicago**

            By: */s/ Barton O'Brien*

            One of Its Attorneys

Michael P. Sheehan
Barton O'Brien
Sara J. Schroeder
Joan Ahn
Henry Byrne
Taft Stettinius and Hollister LLP
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011
Email:  msheehan@taftlaw.com
     bobrien@taftlaw.com
     sschroeder@taftlaw.com
     jahn@taftlaw.com
     hbyrne@taftlaw.com

11