**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LUCY WASHINGTON,<br><br>*Plaintiff*,<br>v.<br><br>CITY OF CHICAGO, CARLY CERVANTEZ, and RENATA KLEPACKI,<br><br>*Defendants*. | ) | No. 24 C 12842<br><br>Chief Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Defendant City of Chicago moves to dismiss Count X of Plaintiff Lucy Washington's First Amended Complaint. (Dkt. 73). For the reasons below, the Court denies the City's Motion. (*Id.*)

**BACKGROUND**

The Court dismissed Washington's *Monell* claim (Count X) from her Original Complaint on May 1, 2025. (Dkt. 26). The Court ruled that her *Monell* claim was deficient because she "has not alleged any other incidents involving a Chicago Police Officer who conducted a traffic stop based purely on information about an individual's FOID Card or CCL status. Nor has she alleged any other incidents relevant to her code of silence or racially motivated traffic stops claims." (*Id.* at 5). The driving factor behind the Court's ruling was that Washington alleged "a single incident" with "no surrounding context" and failed to allege a plausible "widespread and pervasive policy" of the City "conducting these stops, protecting officers in their unlawful pursuits, and targeting minority drivers along the way." (*Id.* at 7).

Washington filed her First Amended Complaint on April 2, 2026, in which she substantially amended her *Monell* claim. (Dkt. 67). She added 35 additional allegations in her

background section, including allegations concerning the Chicago Police Department and the 18th District. (*Id.*, ¶¶ 61-64). Washington alleges that the Illinois Department of Transportation calculated that Black drivers were "3.84 times more likely to be stopped than white drivers in Chicago" in 2022 (*id.*, ¶ 61), 3.75 times more likely in 2023 (*id.*, ¶ 62), and 4.11 times more likely in 2024. (*Id.*, ¶ 63) (the "IDOT Reports"). Washington alleges that "[i]n December of 2024, the 18th District's pattern and practice of misconduct was exposed in a public letter to the District Commander, identifying racial disparity in traffic stops, abuse of pretextual stops, bias and racial profiling, including disrespectful conduct towards civilians, profanities, insults and threats. Where 90% of the complaints involved African-Americans, despite African-Americans comprising 6% of the 18th District's population." (*Id.*, ¶ 64) (citing the Michael Barz Letter, December 27, 2024).

Washington then walked through four prior instances of Black drivers being stopped, arrested, and charged under circumstances analogous to what Washington alleges the City and the Defendant Officers did to her under the alleged widespread practice. (*Id.*, ¶¶ 65-89) ("Four Prior Individuals"). Each incident consisted of the police stopping a Black driver, conducting a search, seizing firearms, and arresting the driver—despite the driver verifying their right to carry the seized firearm. (*Id.*)

Washington alleges that the Four Prior Individuals are tied to her *Monell* claim (Count X) because the City has a practice of "executing unlawful traffic stops" and "illegal searches" after checking the Law Enforcement Agencies Data System (LEADS) to determine the driver's firearm license status. (*Id.*, ¶ 137). Washinton further alleges that, under this widespread practice, the City targeted Black drivers. (*Id.*, ¶ 139). The City would pull them over based on pretext (such as minor traffic infractions), institute an unconstitutional search, seize the driver's weapons, and then arrest them. (*Id.*, ¶¶ 139-141). Yet, despite knowledge of these unconstitutional practices, not only has

the City has taken no action to remedy them, it instead rewarded the officers who engaged in this conduct, she alleges. (*Id.*, ¶¶ 142-145, 147); (*see also id.*, ¶¶ 88-89, 135-149) (remainder of *Monell* allegations).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotes omitted). "This means that the complaint must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court will accept "well-pleaded allegations of fact as true and draw all reasonable inferences in the plaintiff's favor." *Miao v. United Airlines, Inc.*, 164 F. 4th 622, 623 (7th Cir. 2026). The Court will "not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (quotes omitted).

## DISCUSSION

The City raises several arguments why dismissal is proper. Naturally, they first assert that Washington has failed to allege the existence of a widespread practice. (Dkt. 73 at 3-6). The City asserts that Washington alleges "five separate but related widespread practices." (*Id.* at 4). These are: (i) executing unlawful stops using the LEADS system; (ii) embracing a "code of silence"; (iii) targeting Black drivers; (iv) seizing and arresting Black drivers who lawfully possess firearms; and (v) providing increased pay to officers making these arrests and weapons seizures. (*Id.*) The City asserts that none of the Four Prior Individuals involved issues arising from these five alleged

widespread practices; rather, all were stopped for lawful reasons. (*Id.* at 4-6). The City continues that Washington's allegations concerning the Four Prior Individuals do not move the needle far enough to pass muster under *Monell* for additional reasons. (*Id.* at 6-7). The City's second argument is that these examples are too few and too attenuated. (*Id.*) Third, the City claims there was no constitutional injury because there was no unlawful traffic stop. (*Id.* at 8). The City's fourth argument is that Washington failed to allege that the City caused or was deliberately indifferent to Washington's constitutional rights. (*Id.* at 8-9). Lack of knowledge is the City's fifth point. It maintains that Washington failed to show "that City policymakers had actual or constructive knowledge of the [alleged] widespread practice[.]" (*Id.* at 9-10). The City's sixth and final argument is causation, asserting that Washington failed to allege that the City was the "moving force" behind her alleged constitutional injuries. (*Id.* at 10).

"For a *Monell* claim to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest that: (1) she was deprived of a constitutional right; (2) the deprivation can be traced 'to some municipal action (i.e., "a policy or custom"), such that the challenged conduct is properly attributable to the municipality itself'; (3) 'the policy or custom demonstrates municipal fault, i.e., deliberate indifference'; and (4) 'the municipal action was the moving force behind the federal-rights violation.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (quoting *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021)).

The City challenges the second, third, and fourth elements. (Dkt. 73). The Court begins with the second element—municipal action. "To succeed on that theory, [Washington] must allege facts permitting a reasonable inference 'that the practice is widespread and that the specific violations complained of were not isolated incidents.'" *Thomas*, 74 F.4th at 524 (quoting *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)). "Allegations of 'a few sporadic examples

of an improper behavior' will not suffice." *Id.* (quoting *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021)).

Washington plausibly alleges a widespread practice. *Supra* at 1-3; (Dkt. 67, ¶¶ 61-89, 135-149). She cites three years' worth of evidence showing that Black drivers are pulled over at multiples exceeding White drivers. *Supra* at 1-3; (Dkt. 67, ¶¶ 61-63). She cites a letter—sent to the City's 18th District Police Department Commander—about one year after her alleged arrest alerting the City to "a high number of complaints . . . related to traffic stops, street stops, searches, and unprofessional conduct" that occurred over "the past year." (Michael Barz Letter, December 27, 2024 at 1) ("Barz Letter"); (Dkt. 67, ¶ 64).[1] The Barz Letter overlaps with Washington's allegations because her arrest occurred on December 16, 2023, in the 18th District, and involved similar conduct. (*Compare* Dkt. 67, ¶¶ 7-64 *with* the Barz Letter). Washington then identified the Four Prior Individuals, whose arrests occurred under analogous circumstances to Washington's, albeit with one in 2019 and the other three within the last year or so. *Supra* at 1-3; (Dkt. 67, ¶¶ 65-89).

The City attempts to dissect the Complaint by viewing each allegation in isolation. Consider the City's claim that Washington pled "five separate but related widespread practices." (Dkt. 73 at 4). To embrace the City's position is to disregard the canonical rule that the Court must assess the Complaint "as a whole." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 194 (2024). The question is not whether Washington can muster "factual content" establishing that each of the Four Prior Individuals' arrests are supported by select allegations in Washington's Complaint; it is

[1] The Court finds that it is proper for it to take judicial notice of the Barz Letter. For starters, the City does not object. (Dkt. 73). At any rate, it is central to Washington's Complaint, cited in it, and not inconsistent with her allegations. (Dkt. 67, ¶ 64); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013); *Palacios v. City of Joliet*, 2026 WL 1855869, at *3 (N.D. Ill. June 29, 2026) (considering report on *Monell* claim); *Reinauer v. United Airlines, Inc.*, 2026 WL 1430494, at *5 (N.D. Ill. May 21, 2026) (explaining the contours of what judicially noticed content the Court may accept as true on a motion to dismiss).

whether, when viewing the Complaint as a whole and accepting Washington's allegations as true, Washington plausibly pleaded a widespread practice. *Nat'l Rifle*, 602 U.S. at 194.

The City's argument that the Four Prior Individuals were stopped for lawful reasons unrelated to Washington's alleged widespread practice is a nonstarter. (Dkt. 73 at 5). Washington's allegations are not confined to a singular pretext for a stop using the LEADs or Concealed Carry License status; rather, when reading the Complaint in its entirety, this aspect is but one part of the whole widespread practice. (Dkt. 67, ¶¶ 135-149); *Nat'l Rifle*, 602 U.S. at 194. No matter how the City twists Washington's Complaint, the simple fact remains that Washington no longer relies solely on her own singular incident. (*Compare* Dkt. 26 at 5-8 *with* Dkt. 67, ¶¶ 61-89, 135-149 *with* Dkt. 73 at 6). This cures her original defect and forecloses the City's arguments that dismissal is warranted because Washington is purportedly "left with only the allegations of her own incident[.]" (Dkt. 73 at 6). The Court finds that Washington's allegations are well-pleaded. The Court must therefore "draw all reasonable inferences in [Washington's] favor." *Miao*, 164 F. 4th at 623. That is no insurmountable task as Washington's allegations—when viewed as a whole—tell a plausible story of a widespread practice where City officers target Black drivers who possess firearms, pull them over, and then initiate unconstitutional seizures and arrests—conduct the City has been aware of, statistics support, and yet has been left unaddressed. *Supra* at 1-3; (Dkt. 67, ¶¶ 61-89, 135-149). At the pleading stage no more is required. *Thomas*, 74 F.4th at 524; *Gill*, 850 F.3d at 344; *Palacios*, 2026 WL 1855869, at *5.

The City's argument that challenges the facts underlying Washington's allegations is ill suited for the pleading stage. The evidence Washington marshalled is not relevant under Rule 12(b)(6). "By requiring no more than a statement of the claim, Rule 8 establishes 'implicitly, but with unmistakable clarity,' . . . that evidence of the claim is *not* required." *Berk v. Choy*, 607 U.S.

187, 193 (2026) (quoting *Hanna v. Plumer*, 380 U.S. 460, 470 (1965)). Start first with the City's claim that "it is well-established in the Seventh Circuit that 'it must be more than one instance, or even three.'" (Dkt. 73 at 7) (quoting *Miller v. City of Harvey*, 2015 WL 5144476, at *4 (N.D. Ill. Aug. 31, 2015) which in turn is quoting *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009)). The Court recently addressed—and rejected—nearly an identical argument in *Palacios*, 2026 WL 1855869, at *6. Just like here, the Court noted there that this "commonly raised and equally misunderstood argument fails for several reasons." *Id.* "To begin, *Thomas v. Cook* is not the guiding standard on the Court's review of a *Monell* claim on a motion to dismiss; the Court there was reviewing the district court's denial of judgment as a matter of law. Here, the Court is bound by the likes of *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) and *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)." *Id.*; *see also supra* at 4. These cases "govern the standard for what a plaintiff must plead to plausibly allege a *Monell* claim to overcome a motion to dismiss—not what is necessary to *prove* that claim or to survive a motion for judgment as a matter of law *after trial*." *Id.* Indeed, the City's reliance on *Miller v. City of Harvey*, 2015 WL 5144476, at *2 (N.D. Ill. Aug. 31, 2015) proves this point. (*See* Dkt. 73 at 7). The Court's ruling there was not on a motion to dismiss—but on a motion for summary judgment. *Miller*, 2015 WL 5144476, at *4. All the other cases the City relies on save one (addressed last) were also decided on summary judgment and are thus inapposite. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005) (decided on summary judgment); *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007); *Palka v. City of Chicago*, 662 F.3d 428, 435 (7th Cir. 2011); *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) (all same).

The Seventh Circuit decision in *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001) was based on a dismissal of plaintiff's complaint under Rule 12(b)(6). *See Latuszkin*, 250

F.3d at 504. Nevertheless, the decision in *Latuszkin* is adverse to the City's position. There, the district court, (relying on *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985)), dismissed plaintiff's complaint "because he had not alleged that the practice caused more than a single constitutional violation." *Id.* On appeal plaintiff argued "that the district court construed his complaint too narrowly in finding that he alleged only one incident of unconstitutional conduct." *Id.* The Seventh Circuit agreed. *Id.* at 504-505. The Seventh Circuit explained that plaintiff "correctly argues on appeal that the district court erred in applying *Tuttle* to this case because *Tuttle* deals with the requirements for proving the existence of a custom. In *Tuttle*, the Supreme Court reversed a jury finding of municipal liability because the plaintiff had been allowed to prove the existence of a municipal policy of inadequate training from the one shooting incident at issue in the case. . . . Mr. Latuszkin's case, however, is at the pleading stage where the court must assume that he can prove his allegations, and therefore the *Tuttle* standards for proof at trial do not apply here." *Id.* So too here. No doubt should Washington come forth with no more than one (or five) total incidents on summary judgment, that may not be enough; but on a motion to dismiss, it is improper to hold Washington to "standards for proof at trial." *Id*. Indeed, "[b]y design, this system of pleading makes it relatively easy for plaintiffs to subject defendants to discovery—even for claims that are likely to fail." *Berk*, 607 U.S. at 194. What is more, the Supreme Court has "consistently rejected" efforts "to require more information for certain kinds of claims" including those under "42 U.S.C. § 1983 [for] actions against municipalities[.]" *Id.* (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 166-169 (1993) (rejecting heightened pleading for *Monell* claims)).

The remainder of the City's arguments are to no avail. The City's third argument—that Washington "concedes" that the Four Prior Individuals never suffered a constitutional injury—is

irrelevant. (Dkt. 73 at 8); *supra* at 5-8. The Court must construe Washington's allegations as true, not as concessions; and Washington's allegations sweep wider than just the pretext for the stops. *Supra* at 5-8; *Miao*, 164 F. 4th at 623.

The Court addresses the City's fourth and fifth arguments together because the City conflates the issues. (Dkt. 73 at 8-9); *supra* at 3-4. The City claims that Washington failed to allege that the City was deliberately indifferent and had knowledge of the widespread practice. (*Id.*) The City overlooks swaths of Washington's Complaint and overreads what is required to plausibly allege a claim under *Monell*. (*Id.*) Washington's reliance on the three years' worth of studies from the IDOT Reports—that show that Black drivers in the 18th District are 3.75 to 4.11 times more likely to be stopped than White drivers—is far from "raw data . . . without context or explanation." (*Id.* at 9); (Dkt. 67, ¶¶ 61-63). Perhaps viewed in a vacuum that could be so, but Washington coupled that data with the Barz Letter, which bolsters these findings. (Dkt. 67, ¶ 64). The Barz Letter states that "over 90% of the complaints . . . involved the stop of Black individuals," despite Black residents comprising "only 6% of the population of the 18th District." (Barz Letter at 1). Washington is a Black woman who was stopped in the 18th District. (Dkt. 67).

As for notice and knowledge, the Barz Letter is addressed to Michael Barz, the 18th District Commander for the Chicago Police Department. (*See* Barz Letter); (Dkt. 67, ¶ 64). While the City claims that neither the IDOT Reports nor the Barz Letter "put City policy makers on notice of the existence of" the alleged widespread practices, that is a merits dispute inappropriate for resolution under Rule 12(b)(6). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (quotes omitted). At any rate, the City fails to challenge the veracity or accuracy of the IDOT Reports and the Barz Letter—not to mention Washington's reliance on them. (Dkt. 73). Given that these are

IDOT Reports, and the Barz Letter is addressed to Barz himself, the City has failed to show that these allegations are not well-pleaded. When viewed as a whole they "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). This much is so given that Washington need only "plausibly suggest" that the alleged widespread practice "demonstrates municipal fault." *Thomas*, 74 F.4th at 524. True the City points out that the Barz Letter was addressing different officers than the named Defendants here (Dkt. 73 at 9-10); but that is of no moment because the Defendant Officers did not move to dismiss—the City did—and the Barz Letter is irrefutably addressed to the City. (*See* Barz Letter).

The City's sixth and final argument is that Washington failed to allege that the City's action was the moving force behind her alleged constitutional violations. (Dkt. 73 at 10). The City asserts that Washington's "allegations related to moving force are sparse," "conclusory," and lack "any factual support." (*Id.*) To survive a motion to dismiss, "'the complaint must allege that an official policy or custom not only caused the constitutional violation, but was "the moving force" behind it.'" *Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) (quoting *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)). "Unless there is an unconstitutional policy, there cannot be official-capacity liability; only individual-capacity liability is possible." *Estate of Sims*, 506 F.3d at 514-15. The City only challenges Washington's allegations of a widespread policy or practice. (Dkt. 73); *see Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012) (listing the three ways a plaintiff can establish an official policy). For this inquiry, the Court asks "whether the complaint alleges a direct causal link between a policy or custom of the [City] and the alleged constitutional violations." *Estate of Sims*, 506 F.3d at 515. As discussed above, Washington's Complaint does. *Supra* at 1-6; (Dkt. 67, ¶¶ 61-89, 135-149). Washington's

allegations form a clear causal link: but for the City's widespread practice, her constitutional rights would not have been violated. *Id.*

**CONCLUSION**

The Court denies the City's Motion to Dismiss. (Dkt. 73).

Virginia M. Kendall
United States District Judge

Date: October 22, 2026